UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| KENTAE ANDRE BOGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV611-031 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| *Commissioner, Social Security* ) | |
| *Administration,* ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

Kentae Andre Boggs received disability insurance benefits and supplemental security income (SSI) benefits for a closed, 2004-2006 period, then applied for more in 2006.[1] Doc. 10-2 at 14.[2] That second application was denied and he now appeals. Doc. 1. The Commissioner's decision should be affirmed.

---

[1] The two programs are different but require the same disability showing by claimants, so the same governing standards apply to administrative rulings under either program. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986), cited in *Daniels v. Astrue*, 2012 WL 1564415 at * 2 (M.D. Ala. Apr. 30, 2012). For convenience the Court will refer only to claimant's disability claim.

[2] The Court is using the pagination imprinted on the top of each page by its electronic docketing software. Those numbers often do not match up with the printed page numbers.

I. **STANDARD OF REVIEW**

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotes and cites omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159.

This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991). Nor may it "reweigh the evidence or make new factual findings." *Brown v. Commissioner of Soc. Sec.*, 2012 WL 638789 at * 1 (11th Cir. Feb. 29, 2012) (citing *Dyer*, 395 F.3d at 1210). Also, the

burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

His case is threaded through the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id*. Then, at step three, if his impairment meets or equals a listed impairment, he is automatically found disabled. *Id*. If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id*. At that step the ALJ assesses "the claimant's residual functional capacity ('RFC')" and "ability to return to [his] past relevant work." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 2012 WL 2017340 at * 1 (11th Cir. Jun. 6, 2012). Finally, if the claimant cannot do that

3

past relevant work, then step five switches the burden back to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

## II. ANALYSIS

Boggs was born in 1977, educated up to but did not finish the ninth grade, doc. 10-2 at 55, and worked heavy labor jobs (poultry dresser, logger, short-order cook, airport maintenance; construction laborer). Doc. 10-2 at 52-53, 68-69. He was injured in 2001, endured four surgeries, and wound up with chronic left arm pain and carpal tunnel syndrome problems beginning in 2002.[3] Doc. 10-2 at 55; doc. 10-3 at 9-10. He says he relies on pain medications and at most sleeps 5 to 6 hours a night due to pain and sleep apnea. Doc. 10-2 at 55-56, 62-63. He gets short of breath quickly and cannot function beyond serving as a deacon in his church. He has diabetes and high-blood pressure controlled by medication. Doc. 10-2 at 63-64.

---

[3] In seeking more benefits in 2006, Boggs alleged his disability began and continued through his first (May 3, 2004 - April 14, 2006) period, which means he implicitly requested that the prior period be reopened. Doc. 10-2 at 14; *see also* doc. 10-2 at 54. Citing *res judicata*, the ALJ refused to reopen that period and thus focused only on the evidence of record regarding claimant's impairments from August 11, 2006 onward. *Id.* at 14-15.

4

A 2009 EMG/Nerve Conduction Study (EMG/NCS) indicated that after his 2001 work injury he "had subsequent bilateral carpal tunnel release on three occasions on the right and two occasions on the left." Doc. 10-2 at 16. He is obese (5'5" and 300 lbs) and says he cannot use his hands (too painful). *Id.* at 18; doc. 15-2 at 9-10. He says he also falls asleep too quickly and frequently. Doc. 10-2 at 18. And, he can only lift 5 to 10 pounds. *Id.* at 56. Because of his pain he takes hydrocodone 4 to 5 times a day, *id.* at 57, has a hard time putting a shirt on, cannot tie his own shoes, and can hold a pen at most for 5 minutes. *Id.* at 58. He suffers pain in the range of 9 on the 10 scale. *Id.* at 59. He does not shop and at most could drive a car for perhaps a mile. *Id.* at 61-62.

The ALJ has not, however, found him very credible. Doc. 10-3 at 9-12 (prior ALJ determination recounting evidence showing that Boggs could not be believed concerning the intensity and duration of his claimed 2004-2006 limitations); *see also* doc. 15-2 at 10 - 11 (recounting his prior drug use and DUI conviction); doc. 10-2 at 19 (finding that Boggs's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the undersigned

finds that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment.").

Turning to the second-application medical evidence, the ALJ noted everything from Boggs' sleep apnea to his carpal tunnel syndrome symptoms, doc. 10-2 at 17-20, then found that he made it all the way to step five, for he could not perform relevant past work. Doc. 10-2 at 18-20. But the ALJ further found that Boggs is exaggerating his pain symptoms, his treating doctors' opinions are unsupported, and even though he cannot perform past relevant work (poultry dresser, construction worker, etc.), his RFC enables him to perform a significant number of "light work" jobs in the national economy. *Id.* at 19-20. The ALJ supported that result with a hypothetical question to a Vocational Expert (VE) who testified, as corroborated by the Dictionary of Occupational Titles, that an individual with claimant's RFC could perform the requirements of representative occupations such as mail clerk, counter clerk, security guard, and a night guard. *Id.* at 20-21. Hence, he is not disabled. *Id.*

Boggs complains that the ALJ failed to pose a complete hypothetical question to the VE. Doc. 16 at 6, 22-25; *see also* doc. 10-2 at 69-70 (the hypothetical). At the hearing, his attorney was permitted to re-pose the same hypothetical question to the VE, but included limitations the ALJ omitted. The VE answered "no" as to whether Boggs would be able to perform even the light work (security guard etc.) jobs. Doc. 10-2 at 71-73. The VE's answers thus supported disability. Boggs contends that the ALJ's question failed to include limitations supported by the record. Doc. 16 at 14-17.

Those arguments dovetail with Boggs's argument that the ALJ failed to duly credit his pain claims[4] and develop a full and fair record

---

[4] Pain claims must be supported by medical evidence. Claimants must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). ALJs may discredit a claimant's testimony of pain and other symptoms. *Holt*, 921 F.2d at 1223. But they must articulate their reasons. *Id.*

So even if medical records include objective evidence of pain, and the ALJ acknowledges that the plaintiff endures pain, he may still conclude that the degree of pain is not disabling in light of all the evidence. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Hence, as here, it was not inconsistent for the ALJ to find claimant suffered pain but is not so severely impaired as to meet the stringent test for disability imposed by the Act. *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984); *see also Kalishek v. Commissioner of Soc. Sec.*, 2012 WL 1938991 at * 3 (11th Cir. May 30, 2012) (ALJ clearly articulated reasons in support of finding that social security disability claimant was not credible, and those reasons were supported by substantial

regarding vocational opportunities available to a claimant. *Id.* at 24-25. He also insists that the ALJ is biased against Boggs, and this is demonstrated by the way he conducted the hearing (he initially cut off counsel's hypothetical question, and constantly prodded Boggs for stale drug-use information, etc.). Doc. 16 at 14-17. Finally, he says no substantial evidence supports the ALJ's decision due to claimed errors of law in three other areas: (1) failing to give proper weight to treating physicians[5] (doctors Hawkins, Hegarty and Coyle); and (2) failing to

---

evidence; claimant argued that his testimony and statements as to intensity, persistence, and limiting effects of his pain were not inconsistent).

[5] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. *See* 20 C.F.R. § 404.1502.

An ALJ must give controlling weight to a treating physician's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *Simone v. Comm'r of Soc. Sec.*, 465 F. App'x 905, 910 (11th Cir. 2012). If the ALJ gives less than controlling weight to the opinion of a treating physician, he must give specific reasons, and failure to state those reasons is reversible error. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). Hence, he must clearly articulate reasons showing "good cause" for discounting it. *Id.*

Good cause exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. *Phillips*, 357 F.3d at 1240-41. The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279–80 (11th Cir. 1987); *Simone*, 2012 WL 1193040 at * 3 ("the ALJ "is free to reject the opinion of

8

develop a full and fair record by not incorporating evidence of pain and powerful medication side effects. Doc. 16 at 28-29.

There is no basis for concluding that that the ALJ failed to properly evaluate Boggs's limitations, as driven by his pain claim. The ALJ traced his medical history since the termination of his first benefit period, pausing to note, as background medical evidence, his pre-2006 medical records. He evaluated Boggs initially during a 2008 hearing but adjourned it for further medical evaluation. Doc. 15-2 at 4-21; *see also* doc. 10-2 at 47 (2009 hearing). That evaluation included the 2009 EMG/NCS, where consultative neurological examiner Basil Holoyda, M.D., opined that Boggs could lift/carry 51/100 pounds and could frequently use his hands. Doc. 10-2 at 19. However, a second consultative examiner, Kevin Coyle, M.D. -- the ALJ noted that he was not a neurologist and did not have the benefit of the EMG/NCS -- said Boggs had a less than sedentary capacity and was limited in standing, sitting, and walking. *Id.* Treating physician Joseph Hegarty, M.D., opined that

---

any physician when the evidence supports a contrary conclusion") (quotes and cite omitted). And "generally[,] the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985) (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985)). But an ALJ can rely on those opinions that are consistent with the evidence and at the same time reject a treating physician's opinion if it is inconsistent with the evidence. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981).

Boggs could sit/stand/walk for 8 hours but suffered significant limits on using his hands.[6] And claimant's family physician Paul Hawkins, M.D., opined that Boggs could only walk less than 5 minutes, stand 1 hour, and cannot bend, squat, or crawl. *Id.* at 20.

The ALJ accepted much of the above evidence -- "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (doc. 10-2 at 19) -- and it helped Boggs make it all the way to step five. But on the issue of his light-job-skill functionality (hence, the pivotal part of the step five analysis), the ALJ rejected all but Holoyda's opinion, most notably because Holoyda is a neurologist who had the benefit of the EMG/NCS before him. And in reaching his "light work" conclusion, the ALJ noted that, despite Boggs's pain claims, he continually improved over the 2006-2009 period. By 2007, for example, Boggs "had no gross abnormalities, no swelling and pulses were 2+ in the upper extremities. . . ." Doc. 10-2 at 19. And the January 2009 EMG/NCS "revealed only minimal median nerve neuropathy at the wrists bilaterally. . . ." *Id.* The ALJ met the pain

---

[6] At the 2009 hearing the ALJ noted the lack of a date and elicited from Boggs that he had not seen Hegarty since "three months beyond" the May 13, 2008 "capacity sheet" that Hegarty had filled out -- "because of gas prices" (Hegarty's office is a long drive for Boggs). Doc. 10-2 at 65.

standard (*see supra* n. 5) by linking his pain-claim determination to substantial medical evidence.

To be sure, the ALJ did find that some of the other doctors' opinions supported Boggs's "statements concerning the intensity, persistence and limiting effects of these symptoms. . . ." *Id.* But he also paused and explained each of his reasons for rejecting them, including those of treating doctor (Hegarty), family physician (Hawkins), treating orthopedist (Benjamin Sutker, M.D.) and consulting examiner Coyle. Coyle, the ALJ pointed out, is not a neurologist and did not have the EMC/NCS when he opined about Boggs's limitations, and "[h]e even gave limits on sitting, standing and walking even though there are no impairments that would limit these areas" (it is undisputed that Boggs claims upper-body impairments like carpal tunnel pain). And Hegarty did not even bother to date his opinion -- that Boggs "had significant limits on using hands" (doc. 10-2 at 20), "presumably based on claimant's allegations. Hegarty had only seen Boggs one time in the last couple years -- when Boggs asked him to complete the form per claimant's testimony." *Id.*

Similarly, the ALJ rejected family physician Hawkins' opinion (that

Boggs "can only walk less than 5 minutes, stand 1 hour, never bend, squat, or crawl") because he simply "made no findings to support these limitations." Id.⁷ In contrast, the ALJ gave great weight to neurologist Holoyda's 2009 findings because they were based on the EMG/NCS, which shows only mild findings inconsistent with Boggs's severe pain/disability allegations. Id. He connected that 2009 time-point back to Sutkers's 2006 evaluation (done five months after Sutker performed surgery to correct Boggs's carpal tunnel syndrome). Doc. 10-7 at 14; doc. 10-2 at 19. Again, Boggs *had been* found disabled and received disability benefits during the 2004-2006 time period, but things changed in 2006 -- namely, Sutker had successfully operated on him. Sutker found that he had no swelling and enjoyed full motion of his hands. Doc. 10-7 at 14. And, although he detected "chronic myofascial pain syndrome," he also found no "recurrence of the cubital [pertaining to the elbow] or carpal tunnel." Id. Eleventh months later, a then-new EMC/NCS revealed (via examination with Daniel Suh, M.D.), continued improvement, doc. 10-2 at 19. Right on through to the 2009 EMC/NCS the ALJ noted medical

---

⁷ It must be remembered that all "medical opinions" that say little more than "he's disabled" may be disregarded as conclusory. *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 2012 WL 573588 at * 3 (11th Cir. 2012). The ultimate determination of disability is reserved to the commissioner. *Garred v. Astrue*, 383 F. App'x 820, 822 (11th Cir. 2010).

12

records showing consistent, though not always uniform, improvement. *Id.* The ALJ did nothing beyond the legal pale in finding, from those medical records showing steady *overall* improvement, that Boggs's pain claim (i.e., that his hands were too painful to use even in "security guard" level work) was simply not credible.

Bearing in mind that this Court cannot reweigh such evidence but can only pass on whether substantial evidence supports the ALJ's decision, *Brown*, 2012 WL 638789 at * 1, Boggs has failed to show that the ALJ's findings lack record support. He does not, for example, demonstrate that any of the above-noted discrediting factors invoked by the ALJ are evidentially unsupported. Instead, he simply disagrees with the ALJ's interpretation and complains of the ALJ's bias (as noted *infra*, there is no evidence of this). His resulting decision *was* supported by substantial evidence.[8]

---

[8] *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.2011) (noting that "hypothetical questions adequately account for a claimant's limitations ... when the questions otherwise implicitly account for [the] limitations."), cited in *Moore v. Comm'r of Soc. Sec.*, 2012 WL 2017340 at *2 (11th Cir. Jun. 6, 2012) ("We conclude that the ALJ's hypothetical question accounted for all of the limitations stemming from Moore's impairments. The ALJ's hypothetical question limited the available jobs to those that required "performing routine, predictable tasks in an atmosphere that allows for a sit/stand option." Although the ALJ did not expressly include the conditions that Moore could not walk on uneven ground and could walk only 250 feet without a cane, the "sit/stand option" expressly limited the available jobs to those permitting constant access to a chair.").

As for Boggs's complaint about bias, doc. 16 at 27-28, it is *not* improper ask a claimant how much of his condition is self-inflicted -- whether he drinks or consumes illegal drugs. *See, e.g., Payne v. Astrue*, 2012 WL 1190852 at * 6 (M.D. Ala. Apr. 10, 2012) ("[the Act] direct[s] the termination or denial of benefits to individuals for whom alcoholism is a contributing factor *material* to a finding of disability.") (emphasis added). Boggs complains that the ALJ asked him about his alcohol and illegal drug consumption at both the 2008 *and* 2009 hearing, and insists that's evidence of undue bias. Doc. 16 at 9. The questions were proper and non-abrasive, and it is common sense that, in evaluating a claimant's credibility, whether or not he inebriates himself and breaks the law are factors anyone would consider. Here, by the way, is all that the ALJ asked at the 2009 hearing:

> Q. Okay. And when's the last time you had anything to drink?
>
> A. Over three years now.
>
> Q. Okay. So when's the last time you smoked any marijuana?
>
> A. Over three years.

Doc. 10-2 at 51. That is simply not a badge of bias. Claimant's recusal argument, then, also fails.

Finally, the flawed-hypothetical question claim is assessed through the following legal standards:

> In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. In other words, if the hypothetical question posed by the ALJ does not comprehensively describe the claimant's impairments, the ALJ's denial of DIB, if based significantly on the VE's testimony, is not supported by substantial evidence.

*Moore*, 2012 WL 2017340 at * 2 (quotes and cites omitted). Part of the hypothetical question can be implicit. *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that "hypothetical questions adequately account for a claimant's limitations ... when the questions otherwise implicitly account for [the] limitations.")). And the ALJ need not include limitations *not* supported by record. *Crawford v. Comm. of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011). In fact, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180.

The 2009 hearing transcript and related medical records show that

15

the ALJ did not err here. All Boggs's attorney did, in eliciting a favorable VE answer, was put back into the ALJ's hypothetical what, as illuminated above, the ALJ was authorized to discredit -- unsupported medical opinions. Nor does he show that the ALJ violated the treating/non-treating physician standards noted *supra*. Indeed, the record shows that ALJ's did his *duty* -- separated fluff from substance -- in a realm where sympathetic doctors can glad-handedly check off disability findings on a form.

Because substantial evidence supports the ALJ's determination, this appeal should be **DENIED**.

**SO REPORTED AND RECOMMENDED,** this 3rd day of July, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA